**William E. COONS, Plaintiff,**

v.

**WASHINGTON MIRROR WORKS, INC. and Electric Motors Corp., Defendants.**

**No. 69 Civ. 4856.**

United States District Court, S. D. New York.

July 5, 1972.

Smith & Griffin, New York City, for defendant Washington Mirror Works, Inc.; Richard D. Smith, New York City, of counsel.

Fuchsberg & Fuchsberg, New York City, for defendant Electric Motors Corp.; Murray L. Lewis, New York City, of counsel.

## OPINION, FINDINGS OF FACT and CONCLUSIONS OF LAW.

LEVET, District Judge.

This action involves two defendants found jointly liable by a jury for causing injury to the plaintiff. Each defendant is cross-claiming the other alleging that the other defendant was solely responsible for the injury caused to the plaintiff.

### I. BACKGROUND OF THE CROSS-COMPLAINTS

On February 23, 1972 a jury returned a verdict for plaintiff Coons on liability against defendants Washington Mirror Works, Inc. ("Washington") and Electric Motors Corp. ("Electric"). On February 29, 1972 the same jury awarded $14,160 for damages to plaintiff Coons against defendants.

Following the jury trial defendant Washington moved to set aside the verdict and dismiss the complaint. Defendant Electric moved for a judgment notwithstanding the verdict or, in the alternative, for declaration of a mistrial. The court in a memorandum of March 28, 1972 denied said motions.

Washington and Electric cross-claimed against each other contending that the other was solely responsible for any liability to plaintiff Coons. On April 12, 1972 Electric moved to dismiss Washington's cross-complaint. This court in a memorandum of May 8, 1972 denied said motion.

Washington and Electric had stipulated that the court would determine the cross-complaints. Hence, by virtue of the memorandum of May 8, 1972, the court decided to proceed in its determi-

nation of the cross-complaint of Washington against Electric and the cross-complaint of Electric against Washington.

Since neither defendant in this action requested the opportunity to submit any additional evidence on the cross-complaints and in fact specifically notified the court of their intention not to do so, the court now proceeds to determine the cross-complaints on the original record.

In view of the pending appeals by plaintiff and by both defendants of the jury verdict in this action, Electric on May 24, 1972 moved for an order staying the determination on the cross-complaints of Washington and Electric pending the hearing and determination of the appeals already taken.

In opposition to Electric's motion Washington urged the court to deny the motion and determine the cross-complaints now in order that all issues would be presented to the Circuit Court at the same time. On June 1, 1972 the court held oral argument on Electric's motion to stay determination of the cross-complaints and denied that motion.

Consequently, the court will now determine both cross-complaints of Washington and Electric.

After examining the record of the jury trial, the exhibits, the pleadings and the Proposed Findings of Fact and Conclusions of Law submitted by counsel (on the cross-complaints), this court makes the following Findings of Fact and Conclusions of Law:

## II. FINDINGS OF FACT

1. On February 23, 1972 the court submitted to the jury a special verdict as to liability only. The jury found both Washington and Electric liable.

(A) The jury found Washington liable on the theory of negligence as it answered each of the following two questions of the special verdict in the affirmative:

(1) "Has plaintiff proved by a fair preponderance of the credible evidence that defendant Washington Mirror Works, Inc. was negligent (under the theory of res ipsa loquitur—or any other negligence) in its operation of and control over the electric hoisting system on the date of the accident. June 11, 1969? *Yes.*

(2) "Has the plaintiff proved by a fair preponderance of the credible evidence that such negligence of defendant Washington Mirror Works, Inc. was a proximate cause in whole or in part of the accident sustained by plaintiff on June 11, 1969? *Yes.*"

(B) The jury found Electric liable on the theory breach of warranty as it answered each of the following two questions of the special verdict in the affirmative:

(3) "Has plaintiff proved by a fair preponderance of the credible evidence that defendant Electric Motors Corp. constructed or installed a defective hoisting system, therefore breaching its warranty? *Yes.*

(4) "Has plaintiff proved by a fair preponderance of the credible evidence that such defective hoisting system was a proximate cause in whole or in part of the accident sustained by plaintiff on June 11, 1969? *Yes.*"

(C) The jury also found in both cases that plaintiff was free from contributory negligence.

2. On February 29, 1972 the court submitted to the jury a special verdict as to damages only. The jury found defendants liable to plaintiff in an award of damages amounting to $14,160.

3. There is adequate evidence in the jury record to sustain the jury's findings that Electric breached its warranty in designing and installing the hoisting system.

I find that Electric improperly designed and installed the hoisting system.

4. At some time prior to April 21, 1969, David Gibbs, President of Wash-

ington Mirror Works, Inc., requested William Pariser, President of Electric Motors Corp., to design and install a hoist for the purpose of unloading plate glass from trucks at the premises of Washington. (21, 191, 196, 359.) [1]

5. A proposed agreement was submitted by Electric to Washington for its acceptance, which agreement outlined the proposed installation of the hoist. (22; Pl.Ex. 1.)

6. William Pariser as President of Electric designed the hoist and installed it at the premises of Washington between April 21 and April 28, 1969. (401, 423, 431.)

7. On May 22, 1969, at the premises of Washington, and in the presence of plaintiff, the truck bridge on the hoist came down when it fell off the rails. (69–71.)

8. Immediately thereafter, William Pariser of Electric went to the premises of Washington and arranged for the removal of the entire truck bridge and hoist and revamped the device at the premises of Electric. (383.)

9. On May 25, 1969, Electric reinstalled the hoist at the premises of Washington after making sufficient alterations so that the truck bridge presumably would run properly on the rails. (384.)

10. On June 11, 1969 while plaintiff Coons was unloading a case of glass from the truck, the hoist bridge came down off the rails causing injuries to plaintiff Coons. (4, 7, 60.)

11. The hoisting device installed by Electric was of "improper, inadequate design which allowed the wheels on the inner flange to be pulled off the flange by the weight of its load . . . ." (327.)

I therefore find that Electric breached its warranty in installing and designing the hoisting system and this breach caused injury to plaintiff.

12. There is adequate evidence in the jury trial record to sustain the jury's findings that Washington was negligent in its operation of and control over the hoisting system and I find that Washington negligently operated and controlled the hoisting system and that this negligence was one of the causes of plaintiff's accident and injury.

13. The hoisting system was constructed and designed so as to lift the crates (cases) and not to drag the crates along the floorbed. (205, 397, 399–400.) I find that defendant Washington dragged the crates along the floorbed of the truck while the hoisting system was in use. (336, 350, 354.)

14. I find that the crate which fell was improperly slung since the cleat was attached around the center of the crate.

The crate which fell on June 11, 1969 had a wooden cleat running around the center of the crate to which cables were attached at either end and thereupon attached to the hoisting system (82–83, 152, 155.)

However, the attachment of the cables to cleats running around the center of the crate is improper. The cleats should be further up toward the top of the crate or otherwise it may topple. As Washington's expert witness, Earl Cardwell, testified, "It [the crate] would not be properly suspended if it was suspended precisely from the center of gravity." (275–280.)

I therefore find that Washington was negligent in its operation of and control over the hoisting system and that the negligence was one of the causes of plaintiff's accident and injury.

15. In summary, I find as the jury found that on the basis of the jury record Washington was liable on a theory of negligence and Electric on a theory of breach of warranty and that the acts of each defendant were causes of plaintiff's accident and injury.

1. Unless otherwise indicated, numbers in parentheses refer to pages in the stenographer's minutes of the trial.

16. I find that defendants Washington and Electric are jointly and severally liable to plaintiff for the amount of the judgment. Each defendant, if it pays plaintiff the full amount of the judgment or any part of said judgment, is entitled to contribution from the other defendant on a 50% basis and, likewise, as to any subsequent payments.

## III. DISCUSSION

It is uncontested that New York law applies.

The New York Court of Appeals three months ago encountered a similar situation to the one before this court and significantly altered the necessity of determining so-called "active-passive" negligence between joint tort-feasors and provided for an apportionment of responsibility between the joint tort-feasors. It is essential to refer briefly to that opinion.

In Dole v. Dow Chem. Co., 30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288 (1972), plaintiff's husband died by inhaling a poisonous fumigant used by his employer to control insects and mites in grain storage bins. The deceased's wife as administratrix of his estate sued the manufacturer of the fumigant alleging that the manufacturer failed to label the substance properly to warn of its dangers. The manufacturer, in a third-party complaint against the deceased husband's employer, charged that the fumigant was properly labeled with full warning of its dangerous nature, and that if decedent's death was caused by negligence, the death was the result of the employer's primary or active negligence and that its own negligence was secondary or passive.

In that opinion the Court of Appeals considered the "active-passive" negligence concept as it has developed in New York. The concept permitted full indemnity in favor of a party found to be passively negligent against another found to be actively negligent who could be brought into the action by the passively negligent party. However, as the Court of Appeals pointed out, the "active-passive" concept has been much criticized and needed reexamination. The problem that created unfair situations under the old rule was when the prime defendant was found *actively* negligent although the secondary defendant (third-party defendant) was negligent also but only passively. In that instance the prime defendant would *not* be able to apportion any of the responsibility on the secondary defendant by way of contribution. Dole v. Dow Chem. Co., supra, at 147–148, 331 N.Y.S.2d 382, 282 N.E.2d 288.

The Court of Appeals eliminated this requirement and reached a more equitable solution in Dole holding that regardless as to whether the prime defendant was actively or passively negligent, it could still bring in the secondary defendant, and the responsibility in negligence would be apportioned between the two defendants. As the court held:

> The conclusion reached is that where a third party is found to have been responsible for a part, but not all, of the negligence for which a defendant is cast in damages, the responsibility for that part is recoverable by the prime defendant against the third party. To reach that end there must necessarily be an apportionment of responsibility in negligence between those parties. Id. at 148–149, 331 N.Y.S.2d at 387, 282 N.E.2d at 292.

Hence, under CPLR 1401, which allows contribution between joint tort-feasors who are subject to the same judgment, once the apportionment of negligence is determined, the liability will be apportioned by means of the right of contribution between the parties.

It may be claimed that the Dole rationale is not applicable in this action because the Dole case concerned an apportionment of responsibility of *negligence* between joint *tort*-feasors and here only one of the defendants, Washington, is liable on the theory of negligence while the other, Electric, is liable

on the theory of breach of warranty. That reasoning is unfounded.

First, the court in Dole was primarily interested in equitably apportioning the responsibility for wrongdoing between the jointly liable wrongdoers.

Secondly, the action of breach of warranty is really a hybrid between tort and contract and was originally conceived and regarded as an action of deceit and misrepresentation—an action in tort. 8 Williston, Law of Contracts § 970, at 484–486 (3d ed. 1964); 12 Williston, Law of Contracts § 1505, at 424–428 (3d ed. 1970). Now, the liability of the seller to the buyer for negligence is very largely superseded by strict liability for breach of warranty, by which the seller insures to a certain degree the quality and safety of the goods. As Prosser on Torts says, "The seller's warranty is a curious hybrid, born of the illicit intercourse of tort and contract, unique in the law." Prosser, Law of Torts § 95, at 634 (4th ed. 1971). Prosser continues:

> "Unlike other elements of a contract, warranty never has lost entirely its original tort character. The old tort form of action on the case is still very much alive, and there are many cases which have held that it may still be maintained for a breach of warranty, without proof of either intentional misrepresentation or negligence." Id. at 635.

And as the New York Court of Appeals stated:

> ". . . Even today, an action for breach of warranty is, in some respects, an action in tort. . . . [T]he distinction between torts and breaches of contract is, ofttimes, so dim and shadowy that no clear line of delineation may be observed and no accurate or satisfactory definition of either may be formulated." Greco v. S. S. Kresge Co., 277 N.Y. 26, 33–34, 12 N.E.2d 557, 561 (1938).

See also Goldberg v. Kollsman Instrument Corp., 12 N.Y.2d 432, 436, 240 N.Y.S.2d 592, 191 N.E.2d 81 (1963).

Consequently, I believe that the New York Court of Appeals would not draw any unfounded distinction between negligence and breach of warranty and would consider Electric as a joint tortfeasor under the Dole rationale.

The Dole case hence is controlling. Washington, the prime defendant, was liable on the theory of negligence and Electric, the secondary defendant, was liable on the theory of breach of warranty. Therefore, the court will apportion the ultimate responsibility of wrong doing between the two parties. Consequently, each of the defendants is entitled to contribution of 50% for any part of the judgment paid.

Since the judgment was against both defendants, under CPLR 1401 defendants Washington and Electric are entitled to contribution from each other for 50% of the damage award. If Washington pays plaintiff the entire judgment, then it has the right to contribution of one-half of such payment from Electric and vice-versa.

## IV. CONCLUSIONS OF LAW

1. New York law applies.

2. The court equally apportions the ultimate responsibility in wrong doing between the two defendants and each defendant is entitled to 50% contribution on payment by it of any part of the judgment. Dole v. Dow Chem. Co., 30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E. 2d 288 (1972).

3. Under CPLR 1401 when there is a judgment against the joint tort-feasors, the parties are entitled to contribution. Here, defendants are entitled to 50% contribution from the other defendant of any part of the judgment paid.

4. Upon proof of payment by either defendant, it may apply to this court (upon ten day notice by certified mail to the address of the defendant against whom the contribution is directed as stated in the judgment herein or to the last known address supplied by the defendant to the other) for a judgment di-

recting contribution of 50% of that payment.

5. No costs are to be awarded to either defendant in either of the actions under the cross-complaints.

Settle judgment upon the cross-complaints pursuant hereto promptly upon notice.