Richard DeVINCENTIS and Lois J.
DeVincentis, his wife, Plaintiffs,

v.

MARYLAND CASUALTY COMPANY, a
foreign corporation, Defendant.

Richard DeVINCENTIS and Lois J.
DeVincentis, his wife, Plaintiffs,

v.

Lawrence C. CLOUD and RCA Corporation,
a Delaware corporation, Defendants.

Superior Court of Delaware, New Castle.

Sept. 16, 1974.

William H. Bennethum, and James P. D'Angelo, Wilmington, for plaintiffs.

F. Alton Tybout, Wilmington, for defendant Maryland Cas. Co.

Warren B. Burt, Wilmington, for defendants Cloud and RCA Corp.

## OPINION ON MOTION TO SEVER

TAYLOR, Judge.

Defendants in Civil Action 281, 1973 have moved to sever the previously consolidated trial of that case from that in Civil Action 734, 1972. The plaintiffs in both actions are the same. The defendant in Civil Action 734, 1972 is the plaintiffs' own insurance carrier in that action. Plaintiffs seek no-fault benefits and other claims relating to two automobile accidents which plaintiffs suffered. Civil Action

281, 1973 is brought against the driver and his employer involving the second of the two automobile accidents which are the basis of Civil Action 734. Plaintiffs and defendant in Civil Action 734, 1972 oppose the motion.

For purposes of this Opinion, the designation "plaintiffs" and "defendants" will refer to the respective parties in Civil Action 281, 1973. Because serious contentions involving the effect of the statute and public policy were raised, which had not been previously considered, the Court agreed to consider the matter notwithstanding the prior consolidation order.

Defendants' first contention is that a consolidated trial is barred by the provisions of 21 Del.C. § 2118(g) of the "no-fault" insurance statute.[1]

Section 2118(g) provides:

"Any person eligible for benefits described in subsections (a)(2) or (a)(3), other than an insurer in an action brought pursuant to subsection (f), is precluded from pleading or introducing into evidence in an action for damages against a tort-feasor those damages for which compensation is available under subsections (a)(2) and (a)(3) without regard to any elective reductions in such coverage and whether or not such benefits are actually recoverable."

From this language, defendants argue that the legislative policy was to sever the trial of general damages from the trial of special damages.[2] The contention is that since the injured party is barred from pleading or introducing evidence of his special damages, this establishes a public policy that the jury which considers the injured party's claim for general damages may not also consider the claim involving the right to recover such special damages. Defendants argue that one of the purposes

---

1. Adopted 58 Del.Laws Ch. 98, effective July 1, 1971.

2. For purposes of this Opinion the limitations on the extent of such recovery are ignored.

These items as specified in 21 Del.C. § 2118 (a)(2) and (a)(3) are referred to as "special damages".

of the severance is to avoid having the jury award general damages upon a factor relationship to the special damages, which defendants argue is an artificial factor which should not be considered in arriving at general damages.

Section 2118(g) is precisely drawn, and by its terms the disability against claim or proof of special damages is made applicable only to a party eligible for benefits under the no-fault insurance provision other than a subrogated insurer. Perhaps the legislative objective was to assure that the injured party could not recover greater general damages resulting from possible confusion of the jury by presenting figures showing special damages for which he was not entitled to recover under the statute. However, the section specifically recognizes that there may be an action by a subrogated insurer against the tort-feasor. Since the recovery of special damages has been separated from that of general damages and the jury would be called upon to render separate verdicts involving separate claimants, the jury, upon proper instruction, would not fall into the error discussed above.

■ One of the primary objectives of the no-fault insurance law was to assure prompt payment to an injured party for medical expenses and lost earnings and property damage. Thus, the injured party gained the economic benefit of immediate payment without awaiting protracted litigation.

■ Since the law provided that the injured party could collect for medical expenses, lost earnings and property damage from his insurer, he was precluded from suing the tort-feasor for these items of damage or from putting in evidence concerning them. Correspondingly, the law specifically provides that the insurer who has paid special damages would be subrogated to the insured's right to recover against the tort-feasor. 21 Del.C. § 2118(f). To the extent that this involves separate recoveries, the law has split the cause of action, as it was viewed at common law. Compare Catalfano v. Higgins, Del.Supr., 188 A.2d 357 (1962). However, the so-called splitting of causes of action was an incidental result and not an objective of the no-fault insurance law. Hence, I do not find a legislative purpose to require severance of the causes of action to the extent that they would require separate trials. Nothing in the statute indicates a legislative intent that the ordinary rules relating to joinder of causes of action would not be available to these so-called split causes of action. Cf. Superior Court Civil Rule 20, Del.C.Ann.

■ Defendants' next contention is that to permit the consolidation of these trials would "inject insurance into the trial", contrary to long-established Delaware policy. See Malone Freight v. Johnson Motor, Del.Super., 2 Storey 286, 156 A.2d 788 (1959); Steenburg v. Braunstein, Del. Super., 6 Terry 588, 77 A.2d 206 (1950); Catalfano v. Higgins, Del.Supr., 188 A.2d 357 (1962). It is true that prior to adoption of compulsory motor vehicle insurance law, Courts have endeavored to prevent the fact of insurance coverage from coming to the knowledge of juries. However, with the advent of no-fault insurance, every motor vehicle owner in this State has become apprised of the requirement that public liability insurance coverage be carried as a prerequisite to motor vehicle licensing. In view of this requirement, it is unrealistic to assume that any jury would be unaware of the statutory requirement, or that the jury would not proceed in the belief that the parties carried at least the required amount of insurance. In recognition of this, it has been common practice in this Court in cases arising since the effective date of the no-fault insurance law to inform the jury during the course of the trial of the fact that certain items which might otherwise be claimed for damages are covered under the no-fault insurance law. Hence, I find no reasonable justification for isolating a cause of action relat-

ing to recovery under the insurance policy from the cause of action involving the injuries themselves on the ground that the result would be to disclose insurance coverage to the jury.

■ Defendants also contend that the result of requiring separate trial of the claim by the insurer for no-fault special damages from the claim of the injured party for general damages would not result in multiple law suits because the subrogated insurer would be bound by the finding of negligence or lack of negligence in the suit by the injured party against the tort-feasor. This, of course, would depend on the order in which the trials occurred. If the subrogated insurer's case came to trial before that of the injured party, it does not appear that a verdict in the subrogated insurer's case would bar the action by the injured party when his case subsequently would come to trial. I find nothing in the statute which compels the subrogated insurer to await the outcome of the injured party's suit.

■ Next, defendants contend that combining the suits for special damages and for general damages would accomplish an objective by indirection which is forbidden to be done directly by the no-fault insurance statute. The analogy which defendant relies on is found in Lutz v. Boltz, Del.Super., 9 Terry 197, 100 A.2d 647 (1953), where the passenger in car number one sued the driver of car number two, who in turn sought to recover back against the driver of car number one for the passenger's claim. The Court denied the latter claim on the basis that the effect would be to circumvent the guest passenger statute by making the driver liable for the injuries to his passenger. The fallacy of the argument in this instance is that, here, the result would not impose additional liability on the defendant. Nothing in the statute relieves the defendant tort-feasor of liability for either special damages or general damages as they existed heretofore. The only added burden is that the jury is now called upon to sever its award, distinguishing between special damages and general damages, awarding the former to the subrogated insurer and the latter to the injured party.

Most of defendants' discussion relates to the joining of the action by the injured party against the tort-feasor with the action by the subrogated insurer against the same tort-feasor. I find no statutory prohibition of such joinder. Rule 20 of the Civil Rules of this Court encourages such joinder. Here, defendants' arguments are less directly applicable because only one of the consolidated actions is against the tort-feasor.

Finally, defendants contend that it is unduly confusing to permit the cases to be tried together because case number 734, 1972 is a contract action in which various types of damages are claimed, arising out of two automobile accidents, while case number 281, 1973 involves only the issue of general damages arising out of only one of the two automobile accidents involved in the other case. It must be assumed that the Judge who granted the motion to consolidate considered the factual relationship of the two cases in making his determination. Therefore, his determination, aside from the issues involving the no-fault insurance statute and the impact of naming an insurer as a party, discussed above, will stand.

The motion to sever is denied.

It is so ordered.